IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PENN RIDGE COAL, LLC and ALLEGHENY PITTSBURGH COAL COMPANY, | )<br>)<br>)<br>) |
| Plaintiffs, | ) Civil Action No. 08-1452 |
| vs. | )<br>)<br>) |
| BLAINE TOWNSHIP, | ) |
| Defendant. | )<br>)<br>) |

AMBROSE, Chief District Judge

## OPINION AND
## ORDER OF THE COURT

### Synopsis

Plaintiffs Penn Ridge Coal, LLC and Allegheny Pittsburgh Coal Company commenced this action seeking injunctive and declaratory relief, as well as damages, against Defendant Blaine Township (the "Township") on the grounds that certain ordinances passed by the Township purporting to strip Plaintiffs of their constitutional rights and preventing Plaintiffs from mining within the Township are unconstitutional. The Township's prior motion to dismiss the Complaint was denied in its entirety, by opinion and order dated April 8, 2009. (Docket No. 30.) Plaintiffs have now moved for judgment on the pleadings, arguing that the ordinances are unconstitutional, preempted by state law, and/or constitute an impermissible exercise of the Township's legislative authority. For the reasons set forth below, I grant Plaintiffs' motion for judgment on the pleadings.

1

## I. Applicable Standards

Federal Rule of Civil Procedure 12(c) states: "Motion for Judgment on the Pleadings. After the pleadings are closed - but early enough not to delay trial - a party may move for judgment on the pleadings." (West 2008). "Judgment will not be granted unless the movant clearly establishes there are not material issues of fact, and he is entitled to judgment as a matter of law." Milgrub v. Continental Cas. Co., 2007 WL 625039, at *3 (W.D. Pa. Feb. 22, 2007) (quoting Sikirica v. Nationwide Ins. Co., 416 F.3d 214, 220 (3d Cir. 2005)). "The Court must view the facts presented in the pleadings and the inferences drawn therefrom in the light most favorable to the nonmoving party." Id.

## II. Factual Allegations

### A. The Plaintiffs

Plaintiffs' factual allegations were set forth in detail in my prior opinion denying the Township's motion to dismiss, but I will reiterate them in relevant part for the sake of clarity herein. Plaintiff Penn Ridge Coal, LLC ("Penn Ridge") is a Delaware limited liability company with offices in Tulsa, Oklahoma. (Complaint [Docket No. 1], at ¶ 1.) Plaintiff Allegheny Pittsburgh Coal Company ("Allegheny Pittsburgh") is a Pennsylvania corporation with offices in Greensburg, Pennsylvania. (Id. at ¶2.) Allegheny Pittsburgh owns approximately 10.6 million recoverable tons of coal reserves in Blaine Township. (Id. at ¶ 57.) These reserves are part of an approximately 56 million tons of recoverable coal reserves (the "Buffalo Reserve") that Allegheny Pittsburgh owns in Blaine Township and surrounding areas. (Id.)

Penn Ridge is a party to a coal lease (the "Coal Lease") with Allegheny Pittsburgh relating to the Buffalo Reserve, including the portion in Blaine Township. (Id. at ¶ 58.) Pursuant

to the Coal Lease, Penn Ridge plans to develop, open and operate a coal mine to extract coal from the Buffalo Reserve.  (Id. at ¶ 59.)  Penn Ridge anticipates selling all or part of the coal produced from the Buffalo Reserve to utility companies for use at coal-fired power plants. (Id. at ¶ 60.)  Penn Ridge's estimated capital costs involved in developing the mine in the Buffalo Reserve are between $165 million and $175 million.  (Id. at ¶ 59.)

### B.  The Township Ordinances

The Township is a second class township located in Washington County, Pennsylvania.  (Id. at ¶ 3.)  On October 16, 2006, the Township adopted an ordinance (the "Corporate Rights Ordinance") bearing the title "An Ordinance by the Second Class Township of Blaine Township, Washington County, Pennsylvania, Eliminating Legal Powers and Privileges from Corporations Doing Business Within Blaine Township to Vindicate People's Right to Democratic Self-Governance."  (Id. at ¶ 26.)  An copy of the Corporate Rights Ordinance is annexed to Plaintiffs' motion as Exhibit 1.  (Docket No. 42-2.)

The Corporate Rights Ordinance provides, in relevant part:

**Section 3**.  Findings and General Purpose.  The Blaine Township Board of Supervisors recognizes that:

(1) A corporation is a legal fiction created and operated by the express permission of the people of Blaine Township as citizens of the Commonwealth of Pennsylvania;

(2) Interpretation of the U.S. Constitution by unelected Supreme Court justices to include corporations in the term "persons" has long denied the peoples' exercise of rights by endowing corporations with constitutional privileges intended solely to protect the citizens of the United States or natural persons within its borders.  Enforcement of those corporate "rights" by courts and governments has long wrought havoc on the peoples' democratic process;

(3) Interpretation of the U.S. Constitution by Supreme Court justices to afford

corporations the protections of the Commerce Clause (Article I, § 8 of the Constitution of the United States) and the Contracts Clause (Article I, § 10 of the Constitution of the United States) has prevented communities and governments from securing the health, safety, welfare, and rights of citizens and natural persons; . . . .

**Section 4**.  Specific Purpose.  The specific purpose of this Ordinance is to guarantee to the residents of Blaine Township their right to a republican form of governance by refusing to recognize the purported constitutional rights of corporations.  By doing so, the Board of Supervisors seeks to remedy current and future harms that corporations have caused - and will continue to cause - to the people of Blaine Township by the exercise of such "rights."

**Section 5**.  Statement of Law.  Corporations shall not be considered to be "persons" protected by the Constitution of the United States or the Constitution of the Commonwealth of Pennsylvania within the Second Class Township of Blaine, Washington County, Pennsylvania.

**Section 6**.  Statement of Law.  Within Blaine Township, corporations shall not be "persons" under the United States or Pennsylvania Constitutions, or under the laws of the United States, Pennsylvania, or Blaine Township, and so shall not have the rights of persons under those constitutions and laws.  In addition, within the Township of Blaine, no corporation shall be afforded the privileges, powers, and protections of the Contracts Clause or Commerce Clause of the United States Constitution, or of similar provisions from the Pennsylvania Constitution.

**Section 7**.  People's Right to Self-Governance and Right of Separation.  The foundation for the making and adoption of this law is the people's fundamental and inalienable right to govern themselves, and thereby secure our rights to life, liberty, property, and pursuit of happiness.  Any attempts to use county, state, or federal levels of government - judicial, legislative, or executive - to preempt, amend, alter, or overturn this Ordinance or parts of this Ordinance, or to intimidate the people of Blaine Township or their elected officials, shall require the Board of Supervisors of Blaine Township to hold public meetings that explore the adoption of other measures that expand local control and the ability of residents to protect their fundamental and inalienable right to self-government.  Such consideration may include actions to separate the municipality from the other levels of government used to preempt, amend, alter, or overturn the provisions of this Ordinance or other levels of government used to intimidate the people of Blaine Township or their elected officials.

(Id. at 2-3.)

On April 28, 2008, the Township passed Ordinance O-002-2008, entitled "Blaine Township Corporate Disclosure and Environmental Protection Ordinance" (the "Disclosure Ordinance"). A copy of the Disclosure Ordinance is annexed to Plaintiffs' motion as Exhibit 2. (Docket No. 42-3.) The Disclosure Ordinance requires corporations doing business in the Township to submit an extensive disclosure form to the Township either prior to commencing business, or if already doing business within the Township, within sixty (60) days of adoption of the Disclosure Ordinance. [Docket No. 42-3, at § 5.] The disclosure obligations include, but are not limited to:

- "details that describe the nature and extent of the business pursued, or to be pursued. . .with such particularity to enable the Supervisors and residents of Blaine Township to understand the effect and impact of the business";

- "a statement detailing which State Routes and Township roads will be used for that business and the impact upon those roads";

- a statement of "the anticipated hours of operation for the location and for the use of roads within the Township";

- a statement as to "whether or not subcontractors are being used at the location and shall identify those subcontractors"; and

- a copy of the articles of incorporation and bylaws of the corporation.

(Id.) All subcontractors must also file their own disclosure statement. (Id.)

In addition to these disclosures, the Disclosure Ordinance prohibits a corporation from doing business in the Township if it "has a history of consistent violations of the law." (Id. at §6.) The corporation is also barred from doing business if any of its officers, directors or principal owners are also directors, officers or owners of any other corporation which has a history of consistent violations of the law. (Id. at §§6-7.) "History of consistent violations of the

5

law" is defined as "[t]hree or more violations over the prior twenty year period." (Id. at 4.) "Violation" is broadly defined to include "notices of violation issued by the Department of Environmental Protection or any other Pennsylvania state agency, or any other state or federal regulatory agency; criminal convictions against the corporation brought by state, federal, or local governments and agencies; and imposition of fines and penalties by any agency of local, state, or federal government." (Id. at 5.)  The term also includes all violations discovered by County Conservation District personnel, or personnel employed or appointed by any local government, consent orders, consent agreements, settlement agreements, and issuance of notices of violation, regardless of any remedy or action taken to resolve the notice. (Id.)

If the Township has "reason to believe" that a corporation or any of its officers, directors or principal owners has such a history of consistent violations, then the corporation will be required to submit a compliance history detailing any violations over the prior twenty years, as well as a compliance history for corporations affiliated with the officers, directors or principal owners. (Id. at §§9-11.)  Any corporation that violates or is convicted of violating the Disclosure Ordinance two or more times shall be permanently prohibited from doing business in the Township, along with the corporation's parent, sister, successors, subsidiaries, alter egos, and all other corporations substantially owned or controlled by that corporation.  (Id. at §16.6.)  The Disclosure Ordinance concludes with the provision that

> [a]ny attempt to use county, state or federal levels of government - judicial, legislative, or executive - to preempt, amend, alter or overturn this Ordinance or parts of this Ordinance, or to intimidate the people of Blaine Township or their elected officials, shall require the Board of Supervisors of Blaine Township to hold public meetings that explore the adoption of other measures that expand local control and the ability of residents to protect their fundamental and inalienable right to self-government.  Such considerations may include actions to

separate the municipality from the other levels of government used to preempt, amend, alter or overturn the provisions of this Ordinance or other levels of government used to intimidate the people of Blaine Township or their elected officials.

(Id. at §17.)

On July 21, 2008, the Township passed Ordinance O-006-2008, entitled "An Ordinance to Protect the Health, Safety, and General Welfare of the Citizens and Natural Environment of Blaine Township by Banning Corporations from Engaging in Mining within the Township; By Banning Corporate Ownership of Land and Mineral Estates used for Mining within the Township; By Banning Persons from Using Corporations to Engage in Mining; By Banning the Exercise of Certain Powers by Mining Corporations; By Recognizing the Rights of Ecosystems and Natural Communities, and By Providing for Enforcement of those Rights."  A similar ordinance had previously been passed by the Township in 2006.  A copy of the two ordinances (hereinafter, the "Mining Ordinances") is annexed to Plaintiffs' motion as Exhibits 3 and 4. (Docket Nos. 42-4 and 42-5, respectively.)[1]

Section 7 of the Mining Ordinances essentially ban all mining conducted by corporations within the Township.  It provides, in relevant part:

> Section 7.1: It shall be unlawful for any corporation to engage in mining activities within the Township of Blaine.  It shall be unlawful for any person to assist a corporation to engage in mining activities within Blaine Township.
>
> Section 7.2: It shall be unlawful for any director, officer, owner, or manager of a corporation to use a corporation to engage in mining activities within the Township of Blaine.

---

[1] The 2006 version (Docket 42-5) was substantially similar to the 2008 Mining Ordinance, but does not include sections 6.6, 7.7 and 7.8 of the 2008 Mining Ordinance. (Docket No. 42-4.) Unless otherwise stated, all citations herein are to the 2008 Mining Ordinance.

Section 7.3: It shall be unlawful for any corporation or its directors, officers, owners, or managers to interfere with the rights of natural communities and ecosystems to exist and flourish, or to cause damage to those natural communities and ecosystems.  The Township of Blaine, along with any resident of the Township, shall have standing to seek declaratory, injunctive, compensatory, and punitive relief for damages caused to natural communities and ecosystems within the Township, regardless of the relationship of those natural communities and ecosystems to Township residents or the Township itself.  Township residents, natural communities, and ecosystems shall be considered to be 'persons' for purposes of the enforcement of the civil rights of those residents, natural communities, and ecosystems.

Section 7.4. It shall be unlawful for any corporation - or the corporation's directors, officers, owners or managers operating in their corporate capacities - to transfer any monies, services, products, or any other thing of value, to persons serving as candidates for elected or appointed offices within the Township.  It shall be unlawful for any corporation - or the corporation's directors, officers, owners or managers operating in their corporate capacities - to contact, or to communicate with, any resident of Blaine Township concerning any issue related to the substance or enforcement of this Ordinance, prior to or after the adoption of this Ordinance.

Section 7.5. It shall be unlawful for any corporation engaging in mining activities, or planning to engage in mining activities, to purchase any land or mineral estates within the Township after the effective date of this Ordinance.

Section 7.6. Mining corporations holding existing titles to land to be used for surface mining, or holding existing titles to minerals to be extracted during mining operations, shall divest those titles within sixty (60) days of submitting a permit application to any State agency which seeks a permit to extract minerals within Blaine Township.  Persons and entities holding title to surface estates shall possess the right of first refusal to purchase title to minerals beneath those estates.  Mineral titles shall be available for purchase at the same price that the titles were originally purchased at the time of original severance from the surface estate.  Mineral estates not sold to persons or entities holding title to the surface estate must be conveyed to other persons, or to entities that do not qualify as mining corporations under this Ordinance, within sixty (60) days of submitting a permit application to any State agency seeking a permit to extract minerals within Blaine Township.  Titles to land to be used for surface mining must be conveyed to persons, or to entities that do not qualify as mining corporations under this Ordinance, within sixty (60) days of submitting a permit application to any State agency seeking a permit to extract minerals within Blaine Township.

> Section 7.7. Persons using corporations to engage in mining in a neighboring municipality shall be strictly liable for all harms caused to the health, safety, and welfare of the residents of Blaine Township from those activities, and for all harms caused to ecosystems and natural communities within the Township.
>
> Section 7.8 Liability. No permit, license, privilege or charter issued by any State or federal Regulatory Agency, Commission or Board to any person or any corporation operating under a State charter, or any director, officer, owner, or manager of a corporation operating under a State charter, which would violate the provisions of this Ordinance or deprive any Blaine Township resident, natural community, or ecosystem of any rights, privileges, or immunities secured by this Ordinance, the Pennsylvania Constitution, the United States Constitution, or other laws, shall be deemed valid within the Township of Blaine.  Additionally, any employee, agent or representative of any State or federal Regulatory Agency, Commission or Board who issues a permit, license, privilege or charter to any person or any corporation operating under a State charter, or any director, officer, owner, or manager of a corporation operating under a State charter, which would violate the provisions of this Ordinance or deprive any resident, natural community, or ecosystem of any rights, privileges, or immunities secured by this Ordinance, the Pennsylvania Constitution, the United States Constitution, or other laws, shall be liable to the party injured and shall be responsible for payment of compensatory and punitive damages and all costs of litigation, including, without limitation, expert and attorneys' fees.  Compensatory and punitive damages paid to remedy the violation of the rights of natural communities and ecosystems shall be paid to the Township of Blaine for restoration of those natural communities and ecosystems.

(Docket No. 42-5, at 5-7.)

The Complaint asserted fifteen claims against the Township in connection with the four ordinances.  For purposes of Plaintiffs' motion for judgment on the pleadings, Plaintiffs argue that: (1) the Corporate Rights Ordinance is unconstitutional as violative of the Supremacy Clause; (2) the Disclosure Ordinance is preempted by state law and is an impermissible exercise of the Township's legislative power; and (3) the Mining Ordinances are preempted by state law.

**III. Plaintiffs' Motion for Judgment on the Pleadings**

    **A.  The Corporate Rights Ordinance**

9

Plaintiffs argue that the Corporate Rights Ordinance is invalid because it conflicts with the United States Constitution.  (Pl. Br. at 5.)  As I previously held in connection with the Township's motion to dismiss, the Corporate Rights Ordinance is directly at odds with Supreme Court precedent clearly establishing that corporations are "persons" with the right to assert various constitutional claims. (Docket No. 30, at 11.)  Under the Supremacy Clause of the United States Constitution, Article 6, Clause 2, the Constitution "shall be the supreme Law of the Land."  It is the role of the federal judiciary to interpret the Constitution and the legislatures may not annul the judgments of those courts and destroy the rights acquired under those judgments. Cooper v. Aaron, 358 U.S. 1, 18 (1958).  Accordingly, the Township does not have the legal authority to annul constitutional rights conferred upon corporations by the United States Supreme Court.

The Township argues that, since the Corporate Rights Ordinance is not self-executing, there is no "real and actual conflict" entitling Plaintiffs to seek a declaratory judgment with respect to the invalidity of the Corporate Rights Ordinance.  (Def. Br. at 9-11.)  I disagree.  The Township, by seeking to apply to the Corporate Rights Ordinance as a basis for dismissal of the Complaint, created a justiciable controversy between the claims asserted in the Complaint and the Corporate Rights Ordinance.  Moreover, it is clear from the Complaint that the Township has adopted the Corporate Rights Ordinance in tandem with the Disclosure Ordinance and the Mining Ordinances, all for the purposes of banning mining and attempting to limit judicial review of the ban.

Accordingly, I hold that the Corporate Rights Ordinance is invalid and unenforceable under the Supremacy Clause of the United States Constitution, and the Supreme Court precedent

set forth above and in my prior opinion (Docket No. 30).

### B.  The Disclosure Ordinance

#### 1.  Preemption

Plaintiffs argue that the Disclosure Ordinance is preempted by the Pennsylvania Business Corporations Law, 15 Pa.C.S.A. § 1101 *et seq.* ("BCL"), and the Limited Liability Company Law, 15 Pa.C.S.A § 8901 *et seq.* ("LLCL").  (Pl. Br. at 7.)  Because the Disclosure Ordinance bans those corporations which have violated any laws more than three times in the prior twenty years from conducting business within the Township, Plaintiffs argue that "[i]n practical terms, the Corporate Disclosure Ordinance acts as a revocation of a corporation's right to engage in lawful business activities within the Township." (<u>Id.</u>)

Under Pennsylvania law, the court applies a five-part test to determine whether a municipal ordinance is pre-empted by state law: "(1) Does the ordinance conflict with the state law, either because of conflicting policies or operational effect, that is, does the ordinance forbid what the legislature has permitted?; (2) Was the state law intended expressly or impliedly to be exclusive in the field?; (3) Does the subject matter reflect a need for uniformity?; (4) Is the state scheme so pervasive or comprehensive that it precludes coexistence of municipal regulation?; and (5) Does the ordinance stand as a obstacle to the accomplishment and execution of the full purposes and objectives of the legislature?" <u>Liverpool Twp. v. Stephens</u>, 900 A.2d 1030, 1033 (Pa. Commw. Ct. 2006).  Applying that test to the Disclosure Ordinance, I find that it is not preempted by the Pennsylvania BCL or LLCL.

I agree with the Township that the BCL and LLCL are, in large part, statutes of creation,

not preemption.[2]   Section 1301 of the BCL, the only provision expressly referred to by Plaintiffs, provides that a corporation may indicate any lawful purpose or purposes in its articles of incorporation, or it will be deemed that the corporation has in effect an all-purpose charter. See Committee Comment, 1988.  Plaintiffs have cited no authority interpreting this language to mean that a Pennsylvania corporation may conduct any legitimate business anywhere in the state without regulation.  I certainly do not interpret the language of section 1301 in such a manner. Indeed, I agree with the Township that Plaintiffs' broad interpretation of the BCL "would enable corporations to challenge any municipal ordinance or decision deemed to 'interfere' with [the corporation's right to do business], including planning and zoning laws." (Def. Br. at 16, n. 20.) Thus, I find no preemption under the first and fifth prongs of the test.

The remainder of the BCL addresses the manner of incorporation, internal corporate governance issues and shareholder issues.  Applying the remaining prongs of the preemption test, I do recognize a need for exclusivity and uniformity on these issues, and the comprehensiveness of the statute.  However, I did not find, and Plaintiffs have not identified, any express provision of the BCL which conflicts with or in any manner addresses the disclosure requirements set forth in the Disclosure Ordinance.  Thus, I find no preemption under the second through fourth prongs of the preemption test.

Accordingly, I find that Plaintiffs have not met their burden of establishing that the Disclosure Ordinance is preempted by the BCL or LLCL.

---

[2]The provisions of the LLCL are substantially similar in nature to those of the BCL, and my reasoning with respect to the BCL applies equally to the LLCL.  Plaintiffs have not identified any sections of the LLCL which distinguishes it from the BCL for purposes of their preemption argument.

## 2. Impermissible Exercise of Legislative Authority

Plaintiffs correctly state that "second class townships, such as Blaine Township, possess only those rights which have been expressly granted to them by the Pennsylvania legislature." (Pl. Br. at 10) (citing Commonwealth v. Hanzlik, 161 A.2d 340, 342 (Pa. 1960)). The Township identifies three sections of the Pennsylvania Second Class Township Code, 53 P.S. § 65101 *et seq.* (the "Code"), which purportedly provide authority for the Township's enactment of the Disclosure Ordinance. (Docket No. 42-3, at 2.) Section 66506 of the Code authorizes a township's board of supervisors to:

> make and adopt any ordinances, bylaws, rules and regulations not inconsistent with or restrained by the Constitution and laws of this Commonwealth necessary for the proper management, care and control of the township and its finances and the maintenance of peace, good government, health and welfare of the township and its citizens, trade, commerce and manufacturers.

53 P.S. § 66506. Section 66527 authorizes the board of supervisors to "adopt ordinances to secure the safety of persons or property with the township and to define disturbing the peace." 53 P.S. § 66527. Section 66529 provides that the board of supervisors "may by ordinance prohibit nuisances, including, but not limited to, the storage of abandoned or junked automobiles, on private and public property and the carrying on of any offensive manufacture or business." Id. at § 66529. Plaintiffs argue that "none of these provisions authorize the enactment of the ordinance." (Pl. Br. at 11.)

"Subject to its enabling legislation and pursuant to its police power, a governing body has the authority to enact laws which it perceives necessary to protect the public health, safety and general welfare." Commonwealth v. Creighton, 639 A.2d 1296, 1300 (Pa. Commw. Ct. 1994) (citing De Paul v. Kauffman, 272 A.2d 500 (Pa. 1971)). Even assuming that sections 66506 and

13

66527 of the Code facially authorize enactment of the Disclosure Ordinance, "it is well-established that the interposition [o]n behalf of the public of the authority of the Commonwealth or its subdivisions is justified only if it appears 'first, that the interests of the public. . .require such interference; and second, that the means are reasonably necessary for the accomplishment of the purpose, and not unduly oppressive upon individuals.'" Holland Enter., Inc. v. Joka, 439 A.2d 876, 879 (Pa. Commw. Ct. 1982) (omission in original) (quoting Lawton v. Steele, 152 U.S. 133 (1894)).  Alternatively stated:

> a law which purports to be an exercise of the police power must not be unreasonable, unduly oppressive, or patently beyond the necessities of the case, and the means which it employs must have a real and substantial relation to the objects sought to be obtained.  Under the guise of protecting the public interests the legislature may not arbitrarily interfere with private business or impose unusual and unnecessary restrictions upon lawful occupations.

439 A.2d at 880 (quoting Cott Beverage Corp. v. Horst, 110 A.2d 405, 407 (Pa. 1955)); see also, Creighton, 639 A.2d at 1300 ("In reviewing a law enacted pursuant to a municipality's police power, a court must determine that the goal sought to be achieved is legitimate and that the means used to achieve that goal are reasonably necessary and not unduly oppressive.")

Plaintiffs argue that sections 66506 and 66527 of the Code do not authorize the enactment of the Disclosure Ordinance, because "that ordinance seeks to regulate *lawful* business activities which pose no threat to the health safety or welfare of the Township."  (Pl. Br. at 11.) In so arguing, Plaintiffs ignore the three distinct sections of the Disclosure Ordinance.  First, sections 5.1 and 5.2 of the Disclosure Ordinance require disclosure of the nature of a corporation's business and its impact on traffic and noise in the Township. (Docket No. 42-3, at 5.)  Sections eight through eleven of the Disclosure Ordinance may require disclosure of a

corporation's history of legal violations. (Id. at 6-7.)  Finally, sections six, seven, twelve and thirteen of the Disclosure Ordinance ban corporations which have received three or more legal violations from doing business in the Township. (Id.)[3]  These sections are not equivalent for analytical purposes.

Reading sections 66506 and 66527 of the Code, I believe that the Township is authorized to require the disclosures set forth in sections 5.1 and 5.2 of the Disclosure Ordinance.  Township's routinely require businesses to disclose the projected impact of their activities on the traffic and community around them.  Nor are such disclosures unusually onerous.

However, I agree with Plaintiffs that the Township has exceeded its authority with respect to those sections of the Disclosure Ordinance relating to notices of legal violations and any resultant ban of corporations from doing business in the Township.  The overbroad definition of violation encompasses even minor legal violations which would bear no relation to the corporation's ability to conduct business safely within the Township.  For instance, several OSHA violations stemming from a single incident occurring eighteen years earlier received by a subsidiary in a different line of business would, under the broad terms of the Disclosure Ordinance, result in a ban of the parent corporation.  The Township has not explained what legitimate health, safety and welfare goals it sought to advance through such a broad ordinance.  Indeed, these sections seem to me to be the very definition of arbitrary and unreasonable.  Accordingly, I find that sections six through twelve, and fourteen through sixteen exceed the

---

[3]The parties disagree whether 'history of violations of law' encompasses notices of potential violation (Pl. Br. at 12) or only actual violations (Def. Br. at 20-21).  For purposes of the motion for judgment on the pleadings, I must adopt the Township's interpretation of the Disclosure Ordinance.

legislative power of the Township under the Code, and are therefore void.[4]

Plaintiffs also argue that Disclosure Ordinance is not authorized by section 66529 of the Code, which permits the Township to prohibit nuisances. The Township counters that the Disclosure Ordinance does not ban activities, only "corporate actors with a proven history of behavior." (Def. Br. at 21.) The Township does not cite any authority permitting second-class townships to ban certain corporate actors as a nuisance pursuant to section 66529 of the Code, nor have I found any such authority. Accordingly, I do not find that section of the Code to provide legislative authorization for the Disclosure Ordinance.

### C. Corporate Mining Ordinances

As set forth in more detail in Part II above, the Mining Ordinances declare it "unlawful for any corporation to engage in mining activities" within the Township. (Docket No. 42-4, at §7.1.) ` Mining is defined as "any commercial activity within Blaine Township in which mineral resources are extracted from the ground within the Township." (Id. at 4.) Plaintiffs propose to conduct longwall mining activities within the Township. They argue that the Mining Ordinances are preempted by Pennsylvania statute. (Pl. Br. at 15.)

Plaintiffs are correct. The "Bituminous Mine Subsidence and Land Conservation Act," 52 P.S. § 1406.1 *et seq.* (the "Bituminous Act"), has as its purpose:

> the protection of the health, safety and general welfare of the people of the Commonwealth, by providing for the conservation of surface land areas which

---

[4]Because I find the Ordinance arbitrary with respect to the broad definition of notices, I need not address whether the Ordinance's application to corporations rather than natural persons is arbitrary. I note that the Township has explained that distinction based on the legal protections offered by the corporate form which are unavailable to individuals and partnerships. (Def. Br. at 21.) In any event, given the Township's explanation, that issue is not appropriate for resolution on a motion for judgment on the pleadings.

16

> may be affected in the mining of bituminous coal by methods other than "open pit" or "strip" mining, to aid in the protection of the safety of the public, to enhance the value of such lands for taxation, to aid in the preservation of surface water drainage and public and private water supplies, to provide for the restoration or replacement of water supplies affected by underground mining, to provide for the restoration or replacement of or compensation for surface structures damaged by underground mining and generally to improve the use and enjoyment of such lands and to maintain primary jurisdiction over surface coal mining in Pennsylvania.

Id. at § 1406.2. Section 1406.7 provides: "All bituminous coal mines or mining operations coming within the provisions of this act shall be under the exclusive jurisdiction of the Department of Environmental Resources. . . ." The Bituminous Act requires that the owner, operator or other person in charge or having supervision over the mine or mining operations apply to the Department of Environmental Resources ("DER") for a permit to conduct mining operations. Id. at § 1406.5. The disclosure requirements in connection with the permit application are extensive, and include detailed maps of the area to be mined, information on the character of the mining operation, and a description of the measures to be taken to prevent subsidence. Id. The DER will not issue a permit to any applicant which fails or has in the past failed to comply with the act or its predecessors, or which "has shown a lack of ability or intention to comply with any provision of this act. . .as indicat[ed] by past or continuing violations." Id. at § 1406.5(f). Further, "[a]ny person, partnership, association or corporation which has engaged in unlawful conduct as defined in section [1406.17a] or which has a partner, associate, officer, parent corporation, subsidiary corporation, contractor or subcontractor which has engaged in such unlawful conduct shall be denied any permit required by this act unless the permit application demonstrates that the unlawful conduct is being corrected to the satisfaction of the department." Id. Finally, the Bituminous Act also provides, in relevant part, that the boards

of township commissioners or supervisors of townships of the second class of any county and their engineers or agents shall be given access to any portion of the mines or mining operations to inspect for the purpose of determining whether the provisions of the act are being complied with, and shall have the right to bring actions to provide for its enforcement. Id. at §§ 1406.11, 1406.13.

As discussed in Part III(B)(1) above, under Pennsylvania law, the court applies a five-part test to determine whether a municipal ordinance is pre-empted by state law. Liverpool Twp., 900 A.2d at 1033. If the answer to even one of the questions is affirmative, then the local ordinance is preempted. Id. Here, the Bituminous Act expressly states that the Commonwealth maintains primary jurisdiction and the DER has exclusive jurisdiction over all bituminous coal mines and mining operations. For this reason alone, the Mining Ordinances are preempted by the act. See Harris-Walsh, Inc. v. Borough of Dickson City, 216 A.2d 329, 336 (Pa. 1966) (interpreting comparable language in the Anthracite Strip Mining and Conservation Act, 52 P.S. §681.1 *et seq*.).

The Township argues that the Mining Ordinances do not attempt to regulate mining, but instead focus on defining which business entities will be able to engage in mining within the Township. (Def. Br. at 13.) This issue, too, is addressed by the Bituminous Act. The Bituminous Act sets forth a permit process required for corporations to engage in mining activities in the state, and also denies permits to those corporations that have failed or may fail to comply with the provisions of the act. Thus, the Mining Ordinances total ban on mining by corporations facially conflicts with the provision of the Bituminous Act. Again, this results in preemption of the Mining Ordinances by the Bituminous Act.

Accordingly, because the Mining Ordinances conflict with the act, and because the Commonwealth and the DER have exclusive jurisdiction to regulate mining in the Commonwealth, the Mining Ordinances are invalid and void.

## CONCLUSION

For the reasons set forth above, I grant Plaintiffs' motion for judgment on the pleadings in its entirety.

## ORDER OF COURT

AND NOW, this 16th day of September, 2009, after careful consideration, and for the reasons set forth in the accompanying Opinion, Plaintiffs' motion for judgment on the pleadings (Docket No. 41) is granted in its entirety.

BY THE COURT:

/s/Donetta W. Ambrose
Donetta W. Ambrose,
Chief U.S. District Judge